1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

ASTRONICS ELECTRONIC
SYSTEMS CORP.,

Petitioner,

v.

MAGICALL, INC.,

Respondent.

C22-729 TSZ

ORDER

12

13

14

15

16

THIS MATTER comes before the Court on a Petition to Confirm Arbitration
Award, docket no. 1, filed by petitioner Astronics Electronic Systems Corp. ("AES"), and
a Cross-Motion to Vacate the Arbitration Award, docket no. 5, filed by respondent
MAGicALL, Inc. ("MAGicALL").  Having reviewed all papers filed in support of, and in
opposition to, the motions, the Court enters the following Order.

17

**Background**

18

19

20

21

22

AES manufactures aircraft electrical systems.  Pet. to Confirm Arbitration Award
at ¶ 3 (docket no. 1).  MAGicALL manufactures components used in electric-power
generation equipment.  *Id.* at ¶ 4.  On August 26, 2014, AES and MAGicALL entered
into a Master Purchase Agreement ("MPA") wherein MAGicALL agreed to design,
manufacture, and sell to AES a Starter Generator Unit (the "1424 SGU") pursuant to

23

1   AES's specifications.  *See* MPA, Ex. B to Bicks Decl. (docket no. 2-2).  The 1424 SGU

2   is one component of an Induction Starter Generator System developed by AES for use on

3   certain aircraft.  Am. Final Award, Ex. A to Bicks Decl. (docket no. 2-1 at 2).  The

4   system is used to start and provide electrical power to the aircraft.  *Id.*

5        Among other obligations, the MPA required MAGicALL to obtain Federal

6   Aviation Administration Repair Station Certification.  MPA (docket no. 2-2 at 15–16).

7   The certification was required for MAGicALL to repair and overhaul any 1424 SGUs in

8   need of service.  *Id.* at 16.  MAGicALL started the process of obtaining the certification

9   in 2014.  Am. Final Award (docket no. 2-1 at 4).  By 2020, MAGicALL had not received

10  the certification, *see id.* at 3, and AES alleged that MAGicALL had breached the MPA.

11  The MPA contained a dispute resolution provision requiring that any dispute be subject

12  to a two-step resolution process administered by Judicial Arbitration and Mediation

13  Services, Inc. ("JAMS") and governed by its rules and procedures.  MPA at § 17 (docket

14  no. 2-2 at 13).  The process required mediation followed, if necessary, by final and

15  binding arbitration.  *Id.*

16       The parties were not able to resolve their dispute via mediation, and on March 31,

17  2021, AES submitted a demand for arbitration.  *See* Demand for Arbitration, Ex. D to

18  Bicks Decl. (docket no. 2-4).  The demand asserted claims for breach of contract against

19  MAGicALL and sought declaratory relief, specific performance, and monetary damages.

20  *Id.* at ¶ 48.  On April 7, 2021, MAGicALL responded to AES's demand and asserted a

21  counterclaim for breach of contract.  Countercl. at ¶¶ 73–106, Ex. E to Bicks Decl.

22  (docket no. 2-5).  MAGicALL alleged that AES breached the exclusivity section of the

23

ORDER - 2

1  MPA by developing a derivative SGU (the "1442 SGU").  *Id.* at ¶¶ 21–33; *see also* Am.

2  Final Award (docket no. 2-1 at 3).

3          On May 7, 2021, JAMS appointed an Arbitrator in the matter, Ex. F to Bicks Decl.

4  (docket no. 2-6), and an arbitration hearing occurred in January 2022, Am. Final Award

5  (docket no. 2-1 at 2).  On May 19, 2022, the Arbitrator entered the Amended Final Award

6  (the "Award") at issue in this action.  *Id.* at 11.  The Arbitrator concluded that

7  MAGicALL breached the MPA by failing to obtain Repair Station Certification and

8  rejected MAGicALL's claim that AES breached the MPA by designing a purportedly

9  derivative SGU.  *Id.*  The Arbitrator held that:  (i) AES is entitled to terminate the MPA;

10  (ii) MAGicALL is required to relinquish to AES all documents that it produced or

11  acquired in connection with the 1424 SGU, including but not limited to certain

12  documents specified in the Award; (iii) the parties are required to negotiate a date and

13  quantity for a "last buy" of 1424 SGUs from MAGicALL; (iv) MAGicALL is required

14  "to cooperate fully to achieve as smooth a transition as possible"; (v) AES is entitled to

15  $85,663 in monetary damages for excess costs incurred in relation to the replacement of

16  twelve 1424 SGUs; and (vi) AES is awarded $14,317.35 in arbitration fees and costs.  *Id.*

17  at 10–11.

18          AES moves, docket no. 1, to confirm the Award pursuant to the Federal

19  Arbitration Act ("FAA"), 9 U.S.C. § 9, and seeks fees and costs in connection with its

20  petition.  MAGicALL moves, docket no. 5, to vacate the Award.  MAGicALL alleges

21  that the Arbitrator (i) committed misconduct and denied it a fair hearing; (ii) exceeded

22  her authority by granting AES relief that contradicts the terms of the MPA; and (iii) acted

23

ORDER - 3

1 with evident partiality toward AES.  *See generally* Mot. to Vacate Arbitration Award

2 (docket no. 5).

3 **Discussion**

4 **1.      Judicial Review of Arbitration Awards**

5         An arbitration award is binding and enforceable unless the Court finds a basis to

6 vacate it pursuant to 9 U.S.C. § 10.  The scope of judicial review of arbitration awards

7 under the Federal Arbitration Act ("FAA") is extremely limited, designed to preserve due

8 process, but not to permit unnecessary public intrusion into private arbitration

9 procedures.  *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998

10 (9th Cir. 2003).  "Neither erroneous legal conclusions nor unsubstantiated factual

11 findings justify federal court review of an arbitral award under the statute." *Id.* at 994.

12 **2.      Whether the Arbitrator Denied MAGicALL a Fair Hearing**

13         MAGicALL moves first to vacate the Award pursuant to 9 U.S.C. § 10(a)(3),

14 which authorizes the Court to vacate an arbitration award "where the arbitrators were

15 guilty of misconduct . . . in refusing to hear evidence pertinent and material to the

16 controversy; or of any other misbehavior by which the rights of any party have been

17 prejudiced."  MAGicALL contends that the Arbitrator denied it a fair hearing when she

18 refused to (i) hear evidence concerning what documents would be subject to transfer

19 under the MPA, and (ii) reopen the hearing to allow discovery of documents related to

20 Dr. John Bangura, an AES witness and employee.

21         On March 8, 2022, the Arbitrator issued an interim award in AES's favor.  *See*

22 Interim Award, Ex. H to Bicks Decl. (docket no. 2-8).  As part of the interim award, the

23

ORDER - 4

Arbitrator required MAGicALL "to relinquish to AES all documents that MAGicALL has produced or acquired in connection with the 1424 SGU, including but not limited to technical information such as design drawings, parts list, and the draft repair station manual—all of which AES owns under the MPA." *Id.* (docket no. 2-8 at 10).  On March 21, 2022, MAGicALL submitted a post-hearing motion to amend the interim award and reopen the hearing to allow discovery from Dr. Bangura.  Ex. I to Bicks Decl. (docket no. 2-9).  According to MAGicALL, the Arbitrator erred in requiring the transfer of certain documents because § 2.14 of the MPA specifically limited the property to be transferred to AES in the event the contract was terminated for lack of performance.  *Id.* (docket no. 2-9 at 3–4).  AES submitted a response brief in opposition to the motion, *see* Ex. J to Bicks Decl. (docket no. 2-10), and MAGicALL provided a reply brief, *see* Ex. K to Bicks Decl. (docket no. 2-11).

On April 14, 2022, after reviewing the parties' briefs, the Arbitrator emailed counsel to request additional information.  Ex. L to Bicks Decl. (docket no. 2-12).  The Arbitrator directed the parties to submit the following:

> MAGicALL:  By affidavit, a specific list of all documents, information, in whatever form, that it both deems are excluded from necessary turn over to AES by the contract language "work instructions, manufacturing plans, etc. proprietary to Seller . . ." AND that they also assert is not necessary to produce the SGU at another producer, keeping in mind the requirement for 100% quality control (i.e. so as not to leave AES in the position of only being able to acquire a potentially inferior "knock off" SGU).  This affidavit shall be submitted no later than April 21, 2022.

> AES:  AES shall respond by affidavit to MAGicALL's list specifying why they disagree, if they do.  AES affidavit shall be submitted not later than April 29.

> No further briefing is to be submitted.

1  *Id.*  In response to the Arbitrator's request, MAGicALL submitted a one-page declaration

2  from its Vice President, *see* Ex. M to Bicks Decl. (docket no. 2-13), accompanied by a

3  spreadsheet showing all documents in MAGicALL's possession concerning the 1424

4  SGU, *see* Ex. N to Bicks Decl. (docket no. 2-14).  AES, however, submitted a fourteen-

5  page declaration from its Vice President of Operations.  Ex. O to Bicks Decl. (docket

6  no. 2-15).  After reviewing AES's declaration, MAGicALL requested permission from

7  the Arbitrator to submit a second declaration on the subject.  Ex. 4 to Hodges Decl.

8  (docket no. 6-4).  The Arbitrator denied MAGicALL's request.  *Id.*  On May 9, 2022, the

9  Arbitrator issued a six-page, single-spaced decision denying MAGicALL's post-hearing

10  motion.  Ex. P to Bicks Decl. (docket no. 2-16).

11      MAGicALL now argues that the Arbitrator is guilty of misconduct because she

12  did not allow it to submit a second affidavit responding to AES's affidavit, and allegedly

13  faulted MAGicALL's declaration for being brief.  The Court disagrees.  "Arbitrators

14  enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude

15  evidence, how and when they see fit.'"  *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591

16  F.3d 1167, 1175 (9th Cir. 2010) (quoting *Indus. Risk Insurers v. M.A.N.*

17  *Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1444 (11th Cir. 1998)).  To support vacatur,

18  an arbitrator's refusal to consider evidence must demonstrate bad faith or be "so gross as

19  to amount to affirmative misconduct."  *United States v. SF Green Clean, LLC*, No. C14-

20  01905, 2014 WL 3920037, at *6 (N.D. Cal. Aug. 8, 2014) (quoting *United Paperworkers*

21  *Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).  Here, the Arbitrator's

22

23

ORDER - 6

1  decision to limit the number of affidavits submitted in support of a post-hearing motion

2  does not rise to the level of bad faith or amount to affirmative misconduct.

3      MAGicALL's argument concerning its request to reopen discovery is equally

4  unavailing.  MAGicALL contends that the Arbitrator committed misconduct by failing to

5  reopen discovery to allow it to examine the emails of Dr. Bangura, a lead engineer in the

6  development of AES's purportedly derivative 1442 SGU.  According to MAGicALL,

7  AES concealed Dr. Bangura's role in the development of the 1442 SGU until the January

8  2022 arbitration hearing.  The Arbitrator, however, found that the evidence did not

9  support this allegation.  On August 2, 2021, AES timely disclosed Dr. Bangura as a

10 hearing witness.  Ex. 1 to Hodges Decl. (docket no. 6-1).  On October 7, 2021, Bernie

11 Raad, AES's Rule 30(b)(6) designee, testified in his deposition that Dr. Bangura was the

12 "principal electromagnetic engineer" for AES's 1442 SGU.  Raad Dep. at 125:6–10,

13 Ex. C to Bicks Decl. (docket no. 14).  The Arbitrator considered MAGicALL's argument

14 on this issue and concluded as follows:

15          There was ample opportunity after Mr. Raad's testimony to determine if
            more discovery was wanted.  [MAGicALL] did not raise the issue of e-mails
16          in the discovery conference the parties had with the arbitrator in September,
            2021.  Furthermore, [MAGicALL] only states that further discovery "may"
17          yield something that would indicate that AES witnesses were lying.  This
            arbitrator already found their demeanor and presentation to be credible.
18          Without more this part of the post hearing motion must be denied on both
            procedural and substantive grounds.
19
20 Ex. P (docket no. 2-16 at 3).  MAGicALL's "dissatisfaction with [the Arbitrator's]

21 discovery ruling is not a basis to vacate an arbitration award."  *See Cristo v. Charles

22 Schwab Corp*., No. 17-cv-1843, 2021 WL 6051825, at *7 (S.D. Cal. Dec. 21, 2021).  The

23

1    Arbitrator's decision to not reopen discovery does not demonstrate bad faith or amount to

2    affirmative misconduct.

3    **3.    Whether the Arbitrator Exceeded Her Authority**

4        MAGicALL moves next to vacate the Award pursuant to 9 U.S.C. § 10(a)(4),

5    which permits a court to vacate an arbitration award where the arbitrator exceeded his or

6    her power such that the award was not mutual, final, and definite. "Arbitrators exceed

7    their powers in this regard not when they merely interpret or apply the governing law

8    incorrectly, but when the award is completely irrational, or exhibits a manifest disregard

9    of law." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) (quoting

10    *Kyocera*, 341 F.3d at 997). The grounds to vacate an arbitration award are extremely

11    narrow, *Kyocera*, 341 F.3d at 998, and "a mere difference of opinion regarding

12    contractual interpretation" will not suffice. *Aspic Eng'g & Constr. Co. v. ECC Centcom*

13    *Constructors, LLC*, 268 F. Supp. 3d 1053, 1057 (N.D. Cal. 2017). Indeed, an arbitration

14    award should be confirmed so long as the "arbitrators' interpretation was 'plausible.'"

15    *Id.* (quoting *Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d

16    1481, 1486 (9th Cir. 1991)).

17        MAGicALL asserts that the Arbitrator exceeded her authority by allegedly

18    misinterpreting the scope of § 2.14 of the MPA, which addresses the documents that

19    MAGicALL is required to provide AES upon termination for lack of performance. The

20    Arbitrator addressed this argument in her six-page, single-spaced decision (discussed

21    above) denying MAGicALL's post-hearing motions. *See* Ex. P to Bicks Decl. As the

22    Arbitrator explained, "[i]t is clear from the contract as a whole that it was drafted to give

23

1   AES ownership and access to the 1424 SGU and its particulars." *Id.* (docket no. 2-16 at

2   4).  "That [section] 2.14 is the exclusive remedy for breach does not mean that other parts

3   of the MPA are not pertinent or helpful in interpreting section 2.14, such as section 2.3.1

4   specifying 100% quality performance of the SGU as well as the reference in both sections

5   2.14 and 2.22 for access to matters 'necessary to produce the product at another

6   provider.'" *Id.*  In Washington, the "touchstone of contract interpretation is the parties'

7   intent." *Tanner Elec. Co-Op v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 674

8   (1996).[1]  "[T]he intent of the parties to a particular agreement may be discovered not only

9   from the actual language of the agreement but also from viewing the contract as a

10  whole." *Id.* (citation omitted).  Contrary to MAGicALL's assertion, the Arbitrator did

11  not exceed her authority when interpreting the MPA; rather, her decision demonstrates a

12  reasoned and plausible interpretation of the parties' agreement.[2]  The Court, therefore,

13  must defer to the Arbitrator's decision.  *See United Paperworkers*, 484 U.S. at 38.

14  _____

15  [1] Section 2.15 of the MPA provides that the "Agreement shall be governed by the laws of the State of
    Washington without resort to said state's conflicts of law rules."  MPA at § 2.15 (docket no. 2-2 at 5).

16  [2] MAGicALL's other arguments also fail.  It contends that the Arbitrator exceeded her authority when she
    interpreted the "last buy" provision of the MPA and calculated damages.  Section 2.25 of the MPA

17  provides for assurance of on-going supply of 1424 SGUs.  MPA at § 2.25 (docket no. 2-2 at 7).
    MAGicALL argues that the "last buy" provision in § 2.25 is inapplicable to the situation at hand and

18  takes issue with the Arbitrator's interpretation of the MPA.  The Court, however, concludes that the
    Arbitrator's contract interpretation is plausible.  The Arbitrator considered MAGicALL's arguments on

19  this issue and explained her reasoning.  Ex. P to Bicks Decl. (docket no. 2-16 at 7).  MAGicALL also
    asserts that the Arbitrator gave AES a double recovery because AES was awarded $85,663 in monetary

20  damages for excess costs incurred for the replacement of twelve 1424 SGUs, *see* Am. Final Award
    (docket no. 2-1 at 11), despite the fact that AES kept the twelve SGUs which might be repaired at a later

21  date.  As the Arbitrator explained, "AES has suffered monetary damages as a result of the absence of a
    repair station" because AES has had to replace repairable SGUs with brand new SGUs.  *Id.* at 6.  The

22  Arbitrator concluded that "AES has prevailed in establishing that $2500 is the reasonable cost of repairing
    the SGU.  The difference between that number and the sale price of $9638 is $85,663 for the [twelve]
    units returned for repair through August, 2021."  *Id.*  The Court concludes that the Arbitrator's damages

23

1    **4.      Whether the Arbitrator Acted with Partiality Toward AES**

2        Finally, MAGicALL moves to vacate the Award pursuant to 9 U.S.C. § 10(a)(2),

3    which provides grounds to vacate an arbitration award where there is "evident partiality

4    or corruption in the arbitrators."  In the Ninth Circuit, the legal standard for "evident

5    partiality" requires "facts showing a 'reasonable impression of partiality.'"  *New Regency*

6    *Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1106 (9th Cir. 2007) (quoting

7    *Schmitz v. Zilveti*, 20 F.3d 1043, 1048 (9th Cir. 1994)).  MAGicALL contends that the

8    Arbitrator faulted it for presenting expert testimony through a "company insider" while

9    simultaneously giving credit to testimony from two AES "insiders."  In the Award, the

10   Arbitrator explained that she did not find the testimony of MAGicALL's expert witness,

11   Dr. Dan Qin, "as persuasive as it might have been" because Dr. Qin is MAGicALL's co-

12   founder "and is destined to either profit by or suffer from the award."  Am. Final Award

13   (docket no. 2-1 at 6).  MAGicALL argues that the Arbitrator then assigned greater weight

14   to the testimony of Raad and Dr. Bangura, who are AES employees.  "Such arbitral

15   assessments regarding witness credibility are not matters for judicial review," *Int'l*

16   *Petroleum Prods. & Additives Co. v. Black Gold, S.A.R.L.*, 418 F. Supp. 3d 481, 489 n.10

17   (N.D. Cal. 2019), and MAGicALL has not demonstrated a reasonable impression of

18   partiality.  As the Arbitrator explained, [d]espite Dr. Qin's obvious interest in the

19   outcome of the litigation I gave his testimony and report careful scrutiny and

20

21   _____

22   calculation is not "completely irrational," *see Kyocera*, 341 F.3d at 998, and will not vacate the Award on
     this ground.

23

ORDER - 10

1   consideration." Am. Final Award (docket no. 2-1 at 6).  The Arbitrator's credibility

2   determination does not justify vacating the Award.[3]

3        The Court concludes that none of MAGicALL's arguments have merit and

4   DENIES its motion to vacate the Award.  Having denied MAGicALL's motion to vacate

5   the Award, the Court GRANTS AES's petition and CONFIRMS the Award.

6   **5.    Attorneys' Fees and Costs**

7        AES requests an award of reasonable fees and costs in connection with this

8   proceeding pursuant to RCW 7.04A.250(2) and (3).  MAGicALL argues that this

9   proceeding is governed only by the FAA, and not Washington law.  AES contends that

10  the parties intended for Washington law to cover all disputes arising from the MPA,

11  which is allegedly evidenced by the fact that the MPA does not mention the FAA or

12  specifically provide that remedies such as the recovery of attorneys' fees are governed by

13  the FAA or any other federal law.

14        Typically, "a general choice-of-law clause within an arbitration provision does not

15  trump the presumption that the FAA supplies the rules for arbitration."  *Sovak v. Chugai*

16  *Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2022); *see also Johnson v. Gruma Corp.*, 614

17  F.3d 1062 (9th Cir. 2010).  "To overcome that presumption, parties to an arbitration

18  agreement must evidence a 'clear intent' to incorporate state law rules for arbitration."

19

20
21   [3] MAGicALL's remaining argument repeats its complaints concerning the Arbitrator's decision not to
     reopen discovery or allow MAGicALL to file a second affidavit.  These adverse rulings do not establish
     partiality.  *See, e.g., Tio v. Wash. Hosp. Ctr.*, 753 F. Supp. 2d 9, 18 (D.D.C. 2010) ("Although a series of
22   unfavorable rulings by the arbitrator may produce an appearance of bias in the eyes of the unsuccessful
     party, it does not justify vacating the arbitration award.").

23

ORDER - 11

1    *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004)

2    (quoting *Sovak*, 280 F.3d at 1269).  For example, in *Fidelity Federal Bank*, the Ninth

3    Circuit saw no clear intent to incorporate California arbitration rules when it considered

4    an arbitration clause providing that disputes were to be resolved "in accordance with the

5    laws of the State of California and the rules of the American Arbitration Association."

6    *Id.* at 1312.

7            Here, the parties' arbitration provision provides that the "agreement shall be

8    construed and enforced in accordance with, and the validity and performance hereof shall

9    be governed by, the laws of the State of Washington, excluding its choice of law

10   provisions."  MPA at § 17 (docket no. 2-2 at 13).  The provision further provides that any

11   arbitration will be "administered by and in accordance with the then existing Rules of

12   Practice and Procedure of [JAMS]"  *Id.*  Although the agreement expresses the parties'

13   intent to construe the MPA using state substantive law, the MPA does not express a

14   "clear intent" to apply Washington's rules for arbitration.  Accordingly, AES's request

15   under RCW 7.04A.250(2) and (3) for attorneys' fees and costs incurred in connection

16   with its petition is DENIED.

17   **Conclusion**

18           For the foregoing reasons, the Court ORDERS:

19           (1)    AES's Petition to Confirm Arbitration Award, docket no. 1, is GRANTED,

20   and the Court CONFIRMS the Arbitrator's Amended Final Award, Exhibit A to the

21   Declaration of James Bicks, docket no. 2-1;

22

23

1    (2)    AES's request for attorneys' fees and costs incurred in connection with its

2 petition is DENIED;

3    (3)    MAGicALL's Motion to Vacate the Arbitration Award, docket no. 5, is

4 DENIED;

5    (4)    The Clerk is DIRECTED to enter Judgment consistent with this Order, send

6 copies of the Judgment and this Order to all counsel of record and Judge J. Kathleen

7 Learned (Ret.), c/o JAMS, 1420 5th Avenue, Suite 1650, Seattle, WA 98101, and

8 CLOSE this case.

9    IT IS SO ORDERED.

10    Dated this 29th day of July, 2022.

Thomas S. Zilly
United States District Judge

ORDER - 13